UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAUREL M. SCRUGGS )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 4:10 CV 2440 CDP |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405 (g) for judicial review of the Commissioner's final decision denying Laurel M. Scruggs' application for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*.

Scruggs claims she is disabled because she suffers from asthma, diabetes, morbid obesity and obstructive sleep apnea. The Administrative Law Judge, however, concluded that Scruggs was not disabled. Scruggs appeals the decision denying her disability benefits. Because I conclude that the ALJ's decision is supported by substantial evidence, I will affirm the decision.

### **Procedural History**

On October 31, 2007, Scruggs filed applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Act. Scruggs alleges that her disability began on June 4, 2004, due to brain tumor residuals, obesity, and trouble with the veins in her legs (Tr. 143). The Social Security Administration initially denied her application on January

16, 2008, and Scruggs filed a timely request for a hearing by an ALJ. The ALJ issued an opinion upholding the denial of benefits on October 27, 2009 (Tr. 9-18). The Social Security Administration Appeals Council denied Scruggs' request for further review on November 29, 2010 (Tr. 1-3). Thus, the decision of the ALJ stands as the final determination of the Commissioner.

## Testimony Before the ALJ

Scruggs testified that she was 40 years old, had completed some college, and lived with her two children, ages 17 and 18 (Tr. 23). She said that she last worked in 2004 as a bus monitor. She testified that she was unable to work due to brain surgeries in 2000 and 2001, which caused her to gain weight and to have diabetes (Tr. 24). She estimated that she weighed 380-390 pounds (Tr. 25). She said that had arthritis in her ankles, knees, hips and shoulder, and had degenerative discs in her lower back (Tr. 24). She estimated that she could not stand for more than five minutes or sit for more than five minutes (Tr. 25). She said that she could lift up to ten pounds, and could walk only fifty feet before needing to sit and rest (Tr. 28). She testified that walking aggravated her asthma, for which she took Albuterol and Advair (Tr. 29-30). She reported that she used a continuous positive airway pressure (CPAP) device to help her sleep, and controlled her diabetes by following a diabetic diet (Tr. 31). She said that climbing steps, stooping down, or bending over caused her pain (Tr. 32). She alleged that she could type for no longer than a couple of minutes, due to pain and stiffness in her shoulders (Tr. 32-33). Scruggs testified that reaching also affected her shoulders (Tr. 32). She alleged that she had daily headaches which made it difficult to focus and which were alleviated only by sleep (Tr. 27-28). She said that the headaches were associated with removal of a small tumor in her head several years ago (Tr. 27). She reported that she could dress herself, but did little housework and laid down most of the day (Tr. 33-35).

The ALJ asked a vocational expert to consider an individual of Scruggs' age, education, work experience, who could perform sedentary work, frequently reach in all directions and overhead, occasionally balance, but never climb stairs, ramps, ropes, ladders or scaffolds, stoop, kneel, crouch, or crawl (Tr. 38-39).  The vocational expert testified that such an individual could work as a receptionist or telemarketer (Tr. 38). The vocational expert testified that there were approximately 12,000 jobs for receptionists and 4,500 jobs for telemarketers within the St. Louis area (Tr. 38).

**Medical Records**

The first medical records, dated January 17, 2006, indicates that Scruggs underwent a chest X-ray at Barnes-Jewish Hospital for the purpose of evaluating her shortness of breath (Tr. 227). The results were negative (Tr. 227). There was no evidence of focal consolidation, pleural effusions, or pneumothorax (Tr. 227). Cardiac and mediastinal silhouettes were identified as normal (Tr. 227).

At an outpatient visit to Barnes-Jewish Hospital on March 13, 2006, it was noted that Scruggs' shortness of breath had improved (Tr. 216-217).  She reported decreased use of Albuterol (Tr. 217). Scruggs was strongly encouraged to diet and exercise (Tr. 217).

Scruggs first presented to Dr. Goeffrey Crimmins on June 15, 2006, at Barnes-Jewish Hospital, and reported feeling all right (Tr. 214).  Dr. Crimmins diagnosed Scruggs with morbid obesity, asthma, obstructive sleep apnea, rhinitis, and pituitary problems (Tr. 214-15).

Dr. Crimmins' records reflect that he saw Scruggs on October 25, 2006 and that she reported that he was doing well and had taken a full-time office job (Tr. 212).  She said her breathing had become a little more difficult, and she had developed a tender nodule on her ankle. Otherwise, she had no complaints (Tr. 212). Her diagnoses were asthma/rhinitis, obesity, lower extremity edema, and obstructive sleep apnea (Tr. 212-13). Scruggs' CPAP machine was malfunctioning (Tr. 213).

Dr. Crimmins noted that Scruggs would reconsider CPAP treatment if she could obtain insurance through her new job (Tr. 213).

Scruggs visited Dr. Crimmins on January 30, 2007, reporting that her asthma was stable but her headaches had worsened without use of the CPAP machine (Tr. 210). Dr. Crimmins continued Scruggs' medications for asthma and allergic rhinitis, and advised her to continue wrapping and elevating her lower extremities when at rest (Tr. 211).

On March 22, 2007, Scruggs presented to Dr. Crimmins and reported feeling well with no complaints (Tr. 207). Scruggs followed up with Dr. Crimmins on July 3, 2007, complaining only of slight sinus headaches (Tr. 204). She had not repaired her CPAP machine because her "new employer is not currently offering insurance" (Tr. 205).

On July 31, 2007, Scruggs received emergency outpatient treatment at Christian Hospital, for reported pain in her chest (Tr. 237). She denied any problem with headaches, nausea, shortness of breath, cough or back pain (Tr. 237). Her respiration appeared normal, and a chest X-ray provided no evidence of acute disease (Tr. 237, 260). Her chest pain was identified as "muscular." She received medication, and reported feeling much better (Tr. 238, 251). She was discharged in stable condition (Tr. 247).

On September 11, 2007, Scruggs presented at Barnes-Jewish Hospital for an evaluation of obesity (Tr. 202). Scruggs had no complaints (Tr. 202). She had lost weight, and reported increased energy and decreased shortness of breath (Tr. 202). Scruggs reported that she had traveled to Virginia the previous weekend and had noticed "marked improvement in functional capacity" (Tr. 202). The report indicated that Scruggs had been unable to repair a malfunctioning CPAP device because it was not covered by her Medicaid insurance (Tr. 202).

On October 12, 2007, Scruggs saw endicronologist Karen Chang-Chen, M.D. at Barnes-Jewish Hospital (Tr. 196-97).  Scruggs reported that she was feeling okay (Tr. 196).  She had lost 60 pounds through diet changes, and was considering gastric bypass surgery (Tr. 197).  Dr. Chang-Chen suggested that her decreased energy might be attributable to the fact that Scruggs' CPAP machine had been broken for quite some time (Tr. 196).

On October 17, 2007, Scruggs submitted to a health risk screening at Barnes-Jewish Hospital (Tr. 200).  Her functional abilities were described as follows: no difficult walking, no difficulty getting dressed, no difficulty bathing/grooming, no memory problems, and no difficulty with activities of daily living including cooking, cleaning, shopping, and driving (Tr. 200).

Scruggs received emergency outpatient treatment at Christian Hospital on November 27, 2007, complaining of back pain (Tr. 263).  Examination revealed no musculoskeletal problem in her back (Tr. 267).  She was diagnosed with lower back pain, given pain medication, and discharged (Tr. 271).

On February 15, 2008, Scruggs saw Dr. Chang-Chen, reporting that she had decreased energy and woke at night from thirst (Tr. 303-06).  Dr. Chang-Chen's report indicated that Scruggs' thirst function was intact, and she was pursuing bariatric surgery (Tr. 306).  On August 22, 2008, Scruggs returned to Dr. Chang-Chen, reporting that she felt okay and her energy level was fine (Tr. 292).  Scruggs reported that she was having some headaches, and opined that they were due to allergy symptoms (Tr. 292).  She reported that she was unable to take Loratadine due to insurance issues (Tr. 292).  Scruggs denied any chest pain or shortness of breath.  Dr. Chang-Chen noted that Scruggs was doing well on prednisone, and that her hypothyroidism was under control (Tr. 293).  In a letter dated August 26, 2008, Dr. Chang-Chen stated that she had followed Scruggs' history of pituitary

macroadenoma status, central hypothyroidism and adrenal insufficiency (Tr. 295). She indicated that Scruggs exhibited heat and cold intolerance, weight change and frequent headaches (Tr. 297-99). Dr. Chang-Chen stated that she was not trained in disability assessment and was unable to comment on Scruggs' ability to perform certain tasks (Tr. 295).

On March 10, 2008, Scruggs presented to Robert P. Poetz, D.O. (Tr. 288). Dr. Poetz indicated that Scruggs was "working on disability" and trying "to find [a] new private [doctor]" (Tr. 288). Dr. Poetz noted Scruggs' history of a pituitary tumor, asthma, allergies, hypothyroidism, and morbid obesity (Tr. 288). Dr. Poetz indicated that Scruggs had "no current risk factors." He prescribed antibiotics for an infection (Tr. 288).

Scruggs returned to Dr. Poetz's office on March 24, 2008 and was treated for a urinary tract infection (Tr. 287). Scruggs saw Dr. Poetz on April 22, 2008, complaining of a stubbed toe (Tr. 286). She visited Dr. Poetz again on May 1, 2008, complaining of headaches (Tr. 285). Dr. Poetz examined her again on August 15, 2008, and treated her for a urinary tract infection (Tr. 284).

Scruggs visited Dr. Poetz on November 3, 2008, complaining of bilateral shoulder pain (Tr. 329). Dr. Poetz's records in January 2009 indicated that Scruggs' shoulder pain had diminished with medications. (Tr. 326). Scruggs was diagnosed with asthma, hypothyroidism, and a pituitary tumor. (Tr. 326).

On April 13, 2009, Scruggs presented to Dr. Poetz with complaints of right hip and leg pain (Tr. 323). X-rays of her hip and pelvis taken the prior week showed no abnormalities (Tr. 331-32). Dr. Poetz diagnosed Scruggs with right Achilles tendinitis and prescribed ibuprofen and Flexeril (Tr. 323).

In June 2009, Scruggs presented to Dr. Poetz for evaluation of sciatica (Tr. 322). Dr. Poetz diagnosed Scruggs with degenerative joint disease of the lumber spine and chronic lower back pain, for which Dr. Poetz prescribed medication (Tr. 322).

In his treatment notes dated July 2009, Dr. Poetz indicated that Scruggs had presented for evaluation of ear pain and a sore throat (Tr. 321). Dr. Poetz assessed an upper respiratory infection, pituitary macroadenoma, diabetic insipidus, morbid obesity, and panhypopitarism (Tr. 321). Scruggs reported that she slept well and could perform activities of daily living (Tr. 321). Dr. Poetz noted that Scruggs had to move around periodically due to lower back pain (Tr. 321).

On July 9, 2009, Dr. Poetz completed a Physical Residual Functional Capacity Questionnaire (Tr. 317-20). Dr. Poetz indicated that he had been seeing Scruggs once about every two months since March 2008 (Tr. 317). Diagnoses were diabetes insipidus, morbid obesity, chronic lower back pain, and panhypopituitarism, and the prognosis was fair (Tr. 317). Symptoms were listed as shortness of breath after 500 feet, weakness in extremities, headaches, and constant pain relieved by moving around (Tr. 317). Dr. Poetz indicated that these symptoms would frequently interfere with Scruggs' attention and concentration (Tr. 318). Dr. Poetz indicated that Scruggs could sit or stand for up to five minutes at a time, and less than two hours total in an eight-hour workday (Tr. 318). Dr. Poetz estimated that Scruggs needed to walk for one minute every five minutes and take unscheduled breaks to go to the bathroom several times every hour (Tr. 319). Dr. Poetz noted that Scruggs could frequently lift 10 pounds and occasionally lift 20 pounds (Tr. 319). According to Dr. Poetz, Scruggs could occasionally look down or up, turn her head right or left, and hold her head in a static position (Tr. 319). Dr. Poetz indicated that Scruggs could rarely twist, stoop, bend, crouch

or squat, and could never climb ladders or stairs (Tr. 320). Dr. Poetz estimated that Scruggs would likely miss about four days of work per month due to her impairments (Tr. 320).

### **Legal Standard**

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the ALJ's decision, a court may not reverse it because substantial evidence exists in the record that could have supported a contrary outcome. *Id*. Nor may a court reverse the ALJ's decision because it would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (9th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

8

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which was lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); § 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the Commissioner must decide if the claimant is engaging in any substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work,

he is not disabled.

If the claimant cannot perform his past relevant work the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints of the plaintiff, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles v. Sullivan, 902 F.2d 657, 660 8th Cir. 1990). In considering subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include: claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency and intensity of plaintiff's pain; (3) any precipating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id*. at 1322.

## The ALJ's Findings

The ALJ found that Scruggs was not disabled considering her age, education, work experience and residual functioning capacity. He issued the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since May 27, 2006 (20 C.F.R. §§ 404.1521 *et seq*., and 416.971 *et seq*.)

3. The claimant has the following severe impairments: asthma, diabetes, morbid obesity, and obstructive sleep apnea (20 C.F.R. §§ 404.1521 *et seq*., and 416.921 *et seq*.).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926).

5. After careful consideration of the entire record the ALJ found that the claimant had the residual functional capacity to perform sedentary work in accordance with 20 C.F.R. 404.1567(a) and 416.967(a).  The claimant has additional nonexertional limitations in that she can only occasionally perform activities requiring balance.  She would be unable to climb ramps, stairs, ropes, ladders, or scaffolds; and could not stoop, kneel, crouch, or crawl.  She could reach in all directions (including overhead) on a frequent basis with both arms.  She would need to avoid concentrated exposure to industrial hazards/unprotected heights and moderate exposure to pulmonary irritants.  She would need to work in a temperature controlled environment.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

7. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The ALJ concluded that the medical evidence in the record did not support a finding of disability, and that neither Dr. Poetz's medical opinion nor Scruggs' subjective opinion deserved significant weight, because he perceived inconsistencies between Dr. Poetz's opinion, Scruggs' testimony, and the record.

### Discussion

As previously mentioned, when reviewing a denial of Social Security benefits, a court must determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g). In this case, Scruggs asserts three arguments for why the ALJ's decision denying benefits should be reversed. First, Scruggs argues that the ALJ's assessment of her Residual Functional Capacity is not supported by substantial evidence, particularly given that the ALJ disregarded the opinion of her treating physician, Dr. Poetz. Second, Scruggs argues that the ALJ improperly relied on testimony of the vocational expert in determining that she was not

disabled. Finally, she argues that the ALJ's assessment of her credibility is not supported by substantial evidence.

1.     RFC Determination

A claimant's RFC is the most he or she can do despite limitations. RFC is assessed based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). The ALJ here concluded that Scruggs retained the RFC to perform sedentary work. Sedentary work principally entails sitting, but walking and standing are required occasionally. 20 C.F.R. § 404.1567(a). According to the applicable regulation, sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id*.

Generally, the opinion of a treating physician is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other sustainable evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.937(d)(2). A treating physician's opinion is given deference over those of consulting physicians. *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992); *Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir. 1991).

Here, Scruggs argues that the ALJ failed to properly consider the opinion of a treating physician, Dr. Poetz. In July 1009, Dr. Poetz indicated that Scruggs could not sit or stand for more than five minutes at a time, and could not stand or walk for more than two hours each in an eight-hour workday (Tr. 318). Dr. Poetz noted that Scruggs had shortness of breath after walking 500 feet, weakness in her extremities, and constant pain relieved by moving around (Tr. 318). According to Dr. Poetz, Scruggs would need to walk for one minute every five minutes, and would need to take

13

several breaks every hour (Tr. 318-19). Dr. Poetz estimated that Scruggs would likely be absent from work about four days per month due to her impairments (Tr. 320).

Dr. Poetz's opinion is not entitled to controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other sustainable evidence in the record. As the ALJ noted, there are no diagnostic test results or objective medical evidence that suggest that Scruggs has any impairment that would be as limiting as Dr. Poetz suggests. Except for the X-rays completed in March of 2008 at Depaul Health Center, which revealed some bilateral degeneration of the glenohumeral joint, there is no evidence of musculoskeletal impairment. X-rays of Scrugg's hips and pelvis completed in April 2009 were normal. A chest X-ray conducted at Christian Hospital in July 2007 also came back negative. The evidence suggests that her medication regimen controlled symptoms related to her asthma/allergic rhinitis. Evidently there are no complications associated with her obesity, sleep apnea, or panhypopituitarism that would preclude her from working. As the ALJ noted, Dr. Poetz appears to have based his assessment on the subjective reports of Scruggs. The ALJ may discredit a physician's opinion that is based on the claimant's subjective complaints. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

The ALJ concluded that Scruggs retained the RFC to perform sedentary work. This conclusion was supported by substantial evidence. No evidence established that Scruggs was able to perform less than sedentary work, and Scruggs reported to doctors that she was able to care for herself, exercise, and travel, and that she had taken a full-time job doing office work.

2. Assessment of Vocational Expert Testimony

Scruggs asserts that her inability to stoop would preclude her from performing sedentary

14

work.  Pl.'s Br. At 9-10; SSR 96-9p.  However, the ALJ's determination at step five is supported by substantial evidence.  An inability to stoop or bend does not necessarily preclude all employment.

SSR 96-9p provides: "A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply … Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping."

Here, the ALJ posed a hypothetical question to the vocational expert about an individual of Scruggs' age, education, work background, and RFC, which included the inability to stoop.  The vocational expert testified that Scruggs could perform jobs that existed in significant numbers in the national economy.  The ALJ was justified in relying on the vocational expert's testimony, and this reliance satisfies the regulations.

   3.  Credibility Assessment

Evidence of pain is necessarily subjective in nature.  Therefore, an ALJ must look to more than just objective medical evidence of pain, or the lack thereof, in determining whether and to what extent a claimant's pain affects ability to perform work-related activities.  *Halpin v. Shalala*, 999 F.2d 342, 346 (8th Cir. 1993); *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991).  Under the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), an ALJ must fully consider all evidence relating to the subjective complaints, including the claimant's work record, as well as observations of the claimant by others (including treating and examining doctors) as to such matters as daily activities; the intensity, duration, and frequency of the pain and conditions causing and aggravating the pain; and functional limitations.  *Ford v. Astrue*, 581 F.3d 979, 982 (8th Cir. 2008).  An ALJ must consider these matters but does not have to discuss each of them in

relation to the claimant. An ALJ is permitted to discount the claimant's complaints if they are "inconsistent with the evidence as a whole." Id. (quoting *Casey v. Astrue*, 503 F.3d 687, 691 n.3 (8th Cir. 2007). When discounting a claimant's complaints, the ALJ is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." Ford, 581 F.3d at 982 (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)).

Here, the ALJ properly assessed Scruggs' testimony and made credibility findings supported by the record evidence. The ALJ determined that Scruggs' testimony was not credible in part because there was a lack of medical evidence supporting her claims. Although an ALJ may not discount testimony solely due to a lack of medical evidence, this is one factor that may properly be considered. Halpin v. Shalala, 999 F.2d 342, 346 (8th Cir. 1993).

Various evidence of record undermines Scruggs' testimony that her impairments have precluded her from working since 2004. The ALJ noted that Scruggs told doctors that she had no difficulty with activities of daily living, including cooking, cleaning, shopping, and driving. She reported that she had managed a weekend trip to Virginia, and had noticed marked improvement in her functional abilities. She told physicians that she exercised regularly and her energy level was okay. The ALJ also observed that no physician ever advised Scruggs to restrict her daily activities on an ongoing basis; instead, they recommended that Scruggs exercise and increase her activity. Additionally, the ALJ observed that during the period of alleged disability Scruggs reported to physicians that she had taken a full-time job doing office work. Treatment notes throughout the record reference Scruggs' "new job" and "new employer." Working generally demonstrates an ability to perform gainful activity. Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005). This evidence supports a finding that Scruggs' testimony as to her limitations was not credible.

In conclusion, the ALJ's determination that Scruggs suffers no disability is supported by substantial evidence in the record as a whole. The decision should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of February, 2012.